GRIFFIS, P.J.,
for the Court:
¶ 1. Cynthia Faulkner was convicted of driving under the influence (DUI) causing death, commonly referred to as DUI homicide, in violation of Mississippi Code Annotated section 63-11-30(5) (Rev.2013). She was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). In this appeal, Faulkner argues that the trial court erred when it denied her motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. We find no error and affirm.
FACTS
¶ 2. On May 19, 2011, at 1:30 p.m., a head-on automobile collision occurred in Batesville, Mississippi. Jerry Willard was driving a white Nissan Altima, and Faulkner was driving a Ford F-150 truck. Willard had two passengers in his car; his wife, Mary Ann, was in the front passenger seat, and his mother, Barbara Dover, was in the rear passenger seat. Dover died as a result of the accident, and Faulkner was taken to the hospital to be examined.
¶ 3. Just before the collision, Faulkner’s truck had almost run into other vehicles. Three witnesses testified to near collisions with Faulkner. Two of the three witnesses testified that Faulkner’s truck had swerved into their lane and nearly struck them head-on. One of these witnesses testified that the driver of the truck was a white female, and was “slumped over as if she was asleep or passed out.” The other witness testified that she stopped her vehicle and started blowing the horn, at which point Faulkner “went back into her own lane and got out of mine.” The third witness testified that he was traveling east on Highway 6 when a truck merged into his lane, scraped his truck, and then sideswiped the trailer he was pulling and knocked the tires off of the trailer.
¶ 4. Three Batesville police officers testified. Officer Michael Hardin testified that he was dispatched to the scene of the accident. He noticed that Faulkner seemed confused and did not understand what he was saying to her. He testified that her “eyes were glassy, [and she was] possibly under the influence.” Officer Daniel Chandler testified that Faulkner was “very calm” but was “confused about what was going on.” Officer Richard Sto-nestreet was asked to take a blood-test kit to the hospital for Faulkner to be tested. Officer Stonestreet witnessed the test being administered and then gave the blood sample to Officer Chandler. Officer Chandler delivered the blood sample to the crime laboratory.
¶ 5. Dr. Timothy Lamb, an emergency-room physician, treated Faulkner for lacerations to her forehead. Faulkner was asked about her medical history, and she identified five medications she was currently taking: Tylenol with codeine, Soma, Ultram, Ativan, and Prempro. According to Dr. Lamb, Tylenol with codeine is an opiate pain reliever, Soma is a muscle relaxer, Ultram is a nonnarcotic pain reliever, Ativan is an anti-anxiety drug, and Prempro is an estrogen replacement. Dr. Lamb also gave Faulkner a Glasgow coma test. Dr. Lamb testified that a Glasgow coma score is a score given to determine consciousness. Dr. Lamb gave Faulkner a score of 15, the best score possible. Dr. Lamb also conducted a urine drug screen report on Faulkner to determine whether there were drugs in her system. Faulkner tested positive for acetaminophen, benzo- *1243 diazepines, and opiates. Dr. Lamb testified that individuals who take these drugs can become confused and should not operate a vehicle. In fact, Dr. Lamb stated that he would not let someone leave the hospital and drive after taking any of these drugs, and that if they did, he would report that person to the authorities.
¶ 6. The Panola County coroner, Grace Grant-Gulledge, testified that Dover’s cause of death was “blunt trauma to the chest.” She also testified that Dover was likely wearing her seatbelt.
¶ 7. Faulkner chose not to testify in her defense. The jury found Faulkner guilty of DUI homicide. It is from this judgment that Faulkner now appeals.
ANALYSIS
¶ 8. Faulkner raises one issue on appeal: whether the trial court erred in the denial of her motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. She claims that the jury verdict was against the sufficiency and weight of the evidence.
¶ 9. “Motions for a directed verdict and judgment notwithstanding the verdict challenge the legal sufficiency of the evidence, and the standard[s] of review for a directed verdict and judgment notwithstanding the verdict are identical.” Barfield v. State, 22 So.3d 1175, 1185 (¶ 34) (Miss.2009). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed....’” Id. Evidence that fails to meet this test is insufficient for conviction. Id. The sufficiency of the evidence is determined by examining whether “any rational trier of fact,” after “viewing the evidence in light most favorable to the prosecution,” could have “found the essential elements of the crime beyond a reasonable doubt.” Id. This Court accepts all evidence that is favorable to the State as true, which includes inferences reasonably drawn from the evidence in favor of the State. Id. at 1186 (¶ 34).
¶ 10. This Court reviews a trial court’s denial of a motion for a new trial based on an abuse-of-discretion standard. Butler v. State, 102 So.3d 260, 268 (¶ 23) (Miss.2012). Similar to the trial court’s standard, this Court has the authority to grant a new trial when the Court determines, in its discretion, that the verdict “is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice.” Id. “If, upon evaluating the evidence in the light most favorable to the verdict, this Court finds itself in disagreement with the jury’s verdict, the proper remedy is to grant a new trial.” Patterson v. State, 37 So.3d 702, 704 (¶ 10) (Miss.Ct.App.2010).
¶ 11. Under Mississippi Code Annotated section 63-ll-30(l)(b) (Rev.2013), “[i]t is unlawful for any person to drive or otherwise operate a vehicle within this state who is ... under the influence of any ... substance which has impaired such person’s ability to operate a motor vehicle....” Section 63-11-30(5) provides:
Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another ... shall, upon conviction, be guilty of a separate felony for each such death ... and shall be committed to the custody of the State Department of Corrections for a period of time of not less than five (5) years and not to exceed twenty-five (25) years for each such death ....
¶ 12. Here, Faulkner was indicted because she did wilfully, unlawfully, and *1244 feloniously operate a motor vehicle under the influence of a substance that had impaired her ability to operate a motor vehicle, and did thereby, in a negligent manner, cause the death of Dover, a human being, in direct violation of section 63 — 11— 30(5). As a result, the State was required to prove beyond a reasonable doubt both elements of the statute: that Faulkner operated a vehicle under the influence, and that she caused the death of another in a negligent manner.
¶ 13. The evidence presented — both the urinalysis reports and witnesses’ interactions with Faulkner — established that Faulkner was under the influence. The urinalysis, completed in the hospital, showed that Faulkner tested positive for Ativan and opiates. While an assessment was not completed that would show the exact amount of these substances in Faulkner’s system, the urinalysis did show the presence of these substances. The evidence of Faulkner’s erratic and dangerous driving established that she was driving negligently and that such driving resulted in Dover’s death. Several witnesses testified that Faulkner seemed dazed and confused after the accident. The coroner determined the cause of death was blunt trauma to the chest, a result of the head-on collision. Other witnesses testified to seeing Faulkner moments before the collision, and stated that she was swerving in and out of lanes and even swiped the side of another’s trailer.
¶ 14. When we consider the trial court’s denial of the motion for a judgment notwithstanding the verdict, we find that the evidence shows beyond a reasonable doubt that Faulkner committed the act charged, and that she did so under such circumstances that every element of the offense existed. Accordingly, we find no error in the denial of the motion for a judgment notwithstanding the verdict. Further, when we consider the trial court’s denial of the motion for a new trial, we do not find that the verdict was so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. Accordingly, we find no error in the denial of the motion for a new trial.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF DRIVING UNDER THE INFLUENCE CAUSING DEATH AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $500 FINE AND $200 TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.